UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AGORA, INCORPORATED,
　　　　　　*Plaintiff-Appellant,*

v.

AXXESS, INCORPORATED, d/b/a
FinancialWeb.Com, Incorporated,
　　　　　　*Defendant-Appellee,*

and

STOCKDETECTIVE.COM, INCORPORATED,
　　　　　　*Defendant.*

No. 00-1570

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-99-3162-AMD)

Argued: March 2, 2001

Decided: April 9, 2001

Before WILKINS, WILLIAMS, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Matthew Joseph Turner, AGORA, INCORPORATED, Baltimore, Maryland, for Appellant. Kara Lynn Daniels, HOLLAND & KNIGHT, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:**

Christopher "Kip" Schwartz, HOLLAND & KNIGHT, L.L.P., Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Agora, Incorporated appeals the dismissal of its defamation action against Axxess, Incorporated. The district court dismissed the case for failure to state a claim upon which relief could be granted, based upon a determination that the allegedly defamatory statement was an opinion that relied on readily available facts and therefore was not actionable. We affirm on the reasoning of the district court, with a slight modification regarding procedure.

I.

Agora is a Maryland company that publishes a monthly investment magazine called *Taipan*. Axxess, a Nevada corporation doing business in Florida, also provides investment advice, through an Internet site called FinancialWeb.com.

FinancialWeb offers an on-line service called Stock Detective, which is "[d]edicated to educating investors about the risks of stock scams and securities fraud." J.A. 122. From the FinancialWeb homepage, users can link to an index of Stock Detective's features, one of which is called "THE List!" *Id.* at 124. THE List! is an internet document titled "THE STOCK DETECTIVE DIRECTORY OF FINANCIAL INFORMATION SOURCES CONTAINING PAID SMALL-CAP COMPANY 'ANALYSIS.'"[1]  *Id.* at 126. This document con-

---

[1]This title appears on a hard copy of THE List! that was submitted to the district court by Agora. A slightly different title appears in Agora's

tains an introductory paragraph, a list of publications and accompanying ratings, a hyperlink to an article about deceptive stock promotion practices, a glossary, and a disclaimer.

The introduction to THE List! sets forth its purpose:

> Stock promoters on the Internet are a busy group. Not only are they constantly spinning new hype for the companies they promote, but they seem to replace each other almost seamlessly on a regular basis. But not all promoters are created - or paid - equally. The latest trend is toward promoters who claim no compensation from the companies they're writing about, but allude to unfettered trading in these same companies' shares. Check out the key at the bottom of The List for a complete explanation of the disclosure ratings.

*Id.* The disclaimer describes, in broad terms, how ratings are assigned to publications:

> The ratings associated with the publications listed in the above referenced table were compiled by Stock Detective from information or materials believed to be accurate. These ratings are the opinion of the publisher as defined above. This does not purport to be a complete analysis of the aforementioned media.

*Id.* at 128.

The list itself is divided into three columns, captioned "Publication Name," "Media Source(s)," and "Disclosure Rating." *Id.* at 126. The entry for *Taipan* reads as follows:

Taipaonline     <u>Internet</u>     Unpaid promoter

*Id.* at 127. The word in the middle column, "Internet," is a hyperlink to *Taipan*'s website, which contains the following policy statement concerning information published in *Taipan*:

---

complaint. We have relied on the hard copy rather than the complaint because, as will be explained below, we are applying summary judgment standards in this appeal, so we may look beyond the face of the complaint.

> [T]he editors, staff, and associates of the *Taipan* Group, as well as its directors, employees and associated individuals, are prohibited from trading on this information until after the information is published — i.e., at least 3 days after our publication has been mailed to our subscribers.

*Id.* at 293 (internal quotation marks omitted). As for the term "unpaid promoter" (the disclosure rating assigned to *Taipan*), the glossary near the bottom of THE List! defines "unpaid promoters" as "'analysts' or 'stock pickers' who claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in shares of the companies they'r [sic] writing about." *Id.* at 128.

Agora contends that calling *Taipan* an unpaid promoter is defamatory. After failing to persuade Axxess to remove this designation, Agora sued Axxess, FinancialWeb, and Stock Detective. Axxess moved to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(2), (6).

The district court granted the motion to dismiss for failure to state a claim. The court concluded that "the rating of *Taipaonline* as an 'unpaid promoter' is not actionable because it constitutes an expression of opinion based on disclosed or readily available facts." J.A. 297.[2]

## II.

In reaching its judgment, the district court applied the standard applicable to Rule 12(b)(6) motions. The court did not restrict its inquiry to the face of the complaint, however, but instead examined materials furnished by the parties in conjunction with the motion to dismiss. By examining such materials, the court implicitly converted the Rule 12(b)(6) proceeding into a summary judgment proceeding.

---

[2]Having determined that dismissal was appropriate for another reason, the district court did not fully address the issue of personal jurisdiction. Because Axxess withdrew its claim regarding personal jurisdiction at oral argument, we will not address this issue either. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (noting that objections to personal jurisdiction are waivable).

*See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Neither party has raised this issue, and it does not appear that either party was prejudiced. Accordingly, reversal on this basis is not warranted. *See id.* at 261; *Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Having examined the record and the parties' briefs in light of this standard, and having had the benefit of oral argument, we concur in the reasoning of the district court. We therefore affirm.

*AFFIRMED*